J. Todd Murphy, Esq. 018871995
90 Washington Valley Rd.
Bedminster NJ 07921
tel. 973-816-2943
Attorney for Plaintiff

---

|  |  |  |
|---|---|---|
| INDUSTRIAL MINERAL HOLDINGS INC. | : | **UNITED STATES DISTRICT COURT** |
|  | : | **DISTRICT OF NEW JERSEY** |
|  | : |  |
| Plaintiffs | : |  |
|  | : | Docket No.: |
|  | : |  |
| VS | : |  |
|  | : |  |
|  | : |  |
| FLUITEC N.V.;  FLUITEC INTERNATIONAL, LLC; SOCIETE DU PONT NEUF, CINMAR B.V.; ANDRE ANNICQ; JANHARM MUSTERS; and, PIERRE VANDERKELEL, | : | **COMPLAINT** |
|  | : |  |
| Defendants | : |  |

---

Industrial Mineral Holdings Inc (IMH) ("Plaintiff"), through their attorney J. Todd Murphy, Esq. file this Complaint against Defendants, Fluitec N.V. and Fluitec International L.C.C. (collectively "Fluitec"); Andre Annicq, Janharm Musters, Pierre Vanderkelen, (collectively the "Controlling Directors") and Societe du Pont Neuf, Cinmar B.V. (collectively the "Controlling Shareholders"), and aver follows:

## INTRODUCTION

1. This case involves an egregious attempt by the Defendants to undermine the value of the Company and Plaintiff's shareholding through the abuse of their powers, engaging in improper business and accounting practices, impede the

Page 1 of 15

1.

efforts of Plaintiff to find buyers for its shares and specifically engage in self-dealing to convert the shareholding of Plaintiff for themselves thus to deprive Plaintiff of the value of its investment.

2. Fluitec N.V. is a closely held Belgian Corporation and is the sole shareholder in Fluitec International L.C.C., which is incorporated in New Jersey, headquartered in the State of New Jersey with all of its business operations located in the State of New Jersey.  Fluitec N.V. has no significant business operations, other than local sales agents, outside of New Jersey.

3. The actions of Defendants, inter alia, violate the provisions of N.J. Stat. Section 14A:12.7 (c).

4. Further, the actions of the Defendants represent an egregious breach of their fiduciary duty to Plaintiffs.

## THE PARTIES

5. Plaintiff Industrial Mineral Holdings Inc. (IMH) is a Delaware Corporation, with its principal place of business at 144 East 44th Street in the City and State of New York.

6. Defendant Fluitec International L.C.C is a corporation registered in and resident in the State of New Jersey with its world headquarters now located at 179 W. 5th St., Bayonne, New Jersey.

7. Defendant Fluitec N.V. is a closely held Belgium corporation with its registered office at 1050 Avenue Louise 367, Brussels, Belgium.  Fluitec holds all of the shares in Fluitec International L.L.C.  Essentially, Fluitec N.V. is a shell corporation that conducts no business or commercial activities in Belgium but instead acts entirely through Fluitec International LLC.

1.

8. Defendants Andre Annicq, Janharm Musters and Pierre Vanderkelen make up the majority of the board of Directors of Fluitec.  Defendant Andre Annicq is a Belgian citizen resident at Evergemsesteenweg 59, 9032 Wondelgem, The Netherlands; Defendant Janharm Musters is a Dutch citizen resident at Tonbridge, Kent, The United Kingdom; Defendant Pierre Vanderkelen is Belgian citizen resident at 2582RM The Hague, Ten Hovestraat 56, the Netherlands. Through the board of directors, they exercise complete control over Fluitec.

9. Defendant Societe du Pont Heuf (SOPON) is a Belgian corporation with its registered office at Burgemeester Etienne Demunter 5 box 4, 1090 Jette, Brussels, Belgium,

10. Defendant Cinmar B.V. (Cinmar) is a Netherlands Corporation with its head office in Hondiuslaan 40, 3528 AB Utrecht, Netherlands.

11. Together SOPON and Cinmar hold 57% of the voting shares in Fluetec.

## JURISDICTION AND VENUE

**SUBJECT MATTER JURISDICTION AND VENUE**

12. This Court has jurisdiction, in this case, pursuant to 28 U.S. Code § 1332 as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the Plaintiffs and all of the Defendants.

13. This Court has general jurisdiction in this matter because all of the Defendants have "systematic and continuous" contacts with the State of New Jersey. Spuglio, 344 F. App'x at 725 (quoting Int'l Shoe, 326U.S.. at 320).

14. Defendants have purposefully and consistently, over a number of years, availed themselves "of the privilege of conducting activities within the forum State, thus

1.

invoking the benefits and protections of its laws." Asahi Metal Indus. Co., Ltd. v. Super. Ct. of Cal., 480 U.S.. 102, 109 (1987). (3d Cir. 2009).

15. Federal Rule of Civil Procedure 4(e) mandates that the federal courts exercise personal jurisdiction over non-resident defendants as provided by the long-arm jurisdiction statute of the state where the Court sits. New Jersey's long-arm statute extends the reach of the New Jersey courts' jurisdiction to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. N.J. Rule 4:4-4(c); DeJames v. Magnificence Carriers, Inc.,654 F.2d 280, 284 (3d Cir.), cert. denied, 454 U.S.. 1085, 102 S.Ct. 642, 70 L.Ed.2d 620 (1981). Therefore, though technically applying a New Jersey Rule, the courts look to federal constitutional case law to determine matters of personal jurisdiction. Park Inn Int'l, L.L.C.. v. Mody Enters., Inc., 105 F. Supp. 2d 370, 373 D.N.J.. 2000).

16. For an entity, its "……… principal place of business are paradigm bases for general jurisdiction [.]" Daimler AG v. Bauman, <u>134 S. Ct. 746, 760</u> (2014) (internal quotation marks omitted). General jurisdiction may also be asserted against out-of-state corporations where "a corporation's operations in a forum state . . . may be so substantial and of such nature as to render the corporation at home in that State." Id. at 761 n.19. Donnenfeld v. Petro Home Servs., Civil Action No. 16-882, at *6 (D.N.J. Mar. 24, 2017).

17. When determining whether a corporate parent is subject to jurisdiction based on the contacts of its corporate subsidiary, the Third Circuit considers three factors: "whether the subsidiary corporation played any part in the transactions at issue, whether the subsidiary was merely the alter ego or agent of the parent, and

whether the independence of the separate corporate entities was disregarded." Lucas v. Gulf & W. Indus., Inc., 666 F.2d 800, 806 (3d Cir. 1981), abrogated on other grounds by EF Operating Corp. v. Am. Bldgs., 993 F.2d 1046 (3d Cir. 1993). A forum will exercise general personal jurisdiction over a parent or holding company "if the parent so controls and dominates the subsidiary as in effect to disregard the latter's independent corporate existence." Id. at 1017; see also, Seltzer v. I.C. Optics, Ltd., 339 F. Supp. 2d 601, 609 (D.N.J. 2004) (holding that a court can exercise jurisdiction over the parent where the subsidiary is merely the "alter ego or agent of the parent" and "separate corporate entities [are] disregarded"). All three test are met in this case.  Fluitec N.V.'s board of Directors and management have complete power over Fluitec International LLC, Fluitec International LLC has no independent existence, no board of directors, no independent management. Fluitec International LLC's own documentation describe New Jersey as Fluitec's  "Worldwide Headquarters".

18. There is, in fact, no separation between Fluitec N.V. and Fluitec LLC. and "veil piercing" is particularly appropriate under New Jersey law for 'closely identified corporations ,' where "there is a confused intermingling of activity of two or more corporations engaged in a common enterprise with substantial disregard of the separate nature of the corporate entities, or serious ambiguity about the manner and capacity in which the various corporations and their respective representatives are acting." Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 394 (N.J. App. Div. 1989). Where such corporations operate in each other's names, or in fact, in the same name, a court "need not consider with

1.

nicety which of them ought to be held liable for the act of one corporation for which the plaintiff deserves payment." Id. at 394 (internal citations omitted)

19. For this Court to exercise jurisdiction over Petitioners/Defendants is reasonable and proper in this District because Defendant Fluitec International L.C.C is headquartered in this district and represents the majority of the business activities of Fluitec N.V. and is the sole shareholder of Fluitec International L.C.C. Fluitec N.V. has full control over all corporate decisions, budgets, hiring, expenses and other business activities of Fluitec International LLC. Fluitec N.V. is the alter ego of Fluitec LLC.

20. This Court's jurisdiction over Fluitec N.V. grants the court jurisdiction over its business activities and over its directors and officers at least as their activities relate to the operation of Fluitec. O'Connor v. Sandy Lane Hotel Co., 496 F.3d 312, 316 (3d Cir. 2007); Sunbelt Corp. v. Noble, Denton & Assocs., 5 F.3d 28, 31 (3d Cir. 1993), Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 145 (3d Cir. 1992); IMO Indus. Inc. v. Kiekert AG, 155 F.3d 354, 259 (3d Cir. 1998). Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) and brings the activities of Fluitec N.V. and its controlling directors and shareholders under the jurisdiction of this Court.

## STATEMENT OF FACTS

21. In September 2011 Fluitec N.V. opened its sole manufacturing facility and Worldwide Corporate headquarters at in Jersey City.  It is now located at 179 W. 5th St., Bayonne, New Jersey.

22. At that time the State of New Jersey provided Fluitec a Business Employment Incentive Program (B.E.I.P) grant worth an estimated $927,600.00.  A condition of this grant was the creation of jobs and investment in the State of New Jersey.

23. In addition, in 2020, Fluitec received a PPP loan from the U.S. Small Business Administration in the amount of $286,000.00.  This loan was forgiven in 2021.

24. Except for regional sales and some limited administration, all of Fluitec's core management functions (R&D, Engineering and purchasing) are performed in New Jersey.  Until travel restrictions forced meetings to become virtual in early 2020, the majority of Fluitec's board meetings were held in the State of New Jersey

25. All management accounting of the Company is in U.S. Dollars and is conducted in New Jersey.

26. The New Jersey operation represents all of Fluitec's manufacturing capacity, holds all of the patents, trademarks and intellectual property, employs the majority of their employees, outside of international sales.

27. Starting in July of 2015, Plaintiff IMH invested $426,972.00 in Fluitec, acquiring 7% of the authorized and issued voting shares.  These funds were used to fund the business activities of Fluitec in New Jersey.

28.  However, in recent years Plaintiff has developed concerns over the operation of the Company.  In particular, Plaintiff has been concerned about crucial management changes, lax business practices and poor/improper accounting procedures which Plaintiff feels damage the Company's business.

29. The Controlling Shareholders and Controlling Director's response to these concerns have been to ignore them, to deprive Plaintiff of timely delivery of

important information concerning the operation of the Company and to conspire against Plaintiff's interests.

30. In early 2021 the Plaintiff requested that management establish a three to five-year business plan.

31. In recent years, Plaintiff has made it clear that he, along with other minority shareholders, would like to liquidate his shares via a third-party sale at fair market value and exit Fluitec.

32. In response to this desire, the board of directors of Fluitec has sought to value the shares of the Company and has voted, at meetings held on May 30, 2021, and June 11, 2021, to explore the sale of the Company. As part of this process, the board obtained three indications from three independent parties about the value of the Company. These valuations indicated that the value of the shareholding of Fluitec would be 2X sales, in the vicinity of twenty million dollars.

33. In July 2021, the Controlling Shareholders and the Controlling Board Members, in a reversal of the Board's policy, expressed a desire to rid themselves of the minority shareholders and to acquire the shares of Plaintiff at a valuation around half of the indicative price obtained by the board form possible investors.

34. The tentative offer from the Defendants dramatically undervalues the Plaintiff's shares. The Defendants are trying to acquire the shares of the minority shareholders at a huge discount and are blocking the efforts by the plaintiff to obtain a fair price offer

35. At the same time, the Controlling Shareholders and the Controlling Directors have consistently blocked efforts by the Plaintiffs to obtain a fair market price offer for their shares with the specific intent to preventing the sale of Plaintiff's

shares to anyone other than the Controlling Shareholders at a price arbitrarily set by the Controlling Shareholders.

36. As a direct result of the refusal of the Plaintiffs to accept this situation, on the 2nd of August, without warning, Defendants Controlling Directors and Controlling Shareholders joined by the Company filed a motion in the Belgian Court to strip Plaintiff of its shares and to force the sale of these shares to the Controlling Shareholders at a valuation following a methodology that would grossly undervalue Plaintiffs' shares.

37. There is no legal or moral basis for this action.  It is a blatant effort to abuse their authority as Controlling Directors and Controlling Shareholders to unfairly oppress Plaintiff as a minority shareholder and deprive Plaintiffs of the fair value of their shareholding.

**COUNT I**
**Oppression of Minority Shareholders**
**(Against All Defendants)**

38. N.J.S.A. 14A:12-7 governs the rights of oppressed minority shareholders and "is interpreted broadly to provide remedies for the distinctive problems of close corporations." Brenner v. Berkowitz, 134 N.J. 488, 508 (1993). The act authorizes a court to consider various equitable remedies, including dissolution of the corporation or ordering a stock sale

39. Thus, the act prevents fraudulent, illegal, or oppressive conduct, which is defined as conduct that "frustrate[es] a shareholder's reasonable expectations." Brenner, 134 N.J. at 506. In addition to establishing misconduct, a shareholder must establish that there is "a nexus between the harm and the minority shareholder's interest in or expectation in the company." Id. at 510. "In determining whether

such a nexus exists, the Court must consider those acts that affect a shareholder's stock interest, as well as those that are specifically targeted to the shareholder ." Food King, Inc. v. Norkus Enters., Inc., No. 04-1500, 2008 WL 3843719, at *16 (D.N.J. Aug. 15, 2008) (citing Brenner, <u>134 N.J. at 508</u>).

40. The term "minority shareholder" is leniently construed to include "any shareholder, regardless of his percentage of ownership interest . . . [who] does not have control of the corporate shares with respect to voting rights." Berger v. Berger, 249 N.J. Super. 305, 317 (Super. Ct. Ch. Div. 1991).

41. "[T]he label worn by those accused of oppression —whether stockholders, directors or officers—is not critical ... [t]he question is whether the[] [oppressors] have the power to work their will on others—and whether have done so improperly." Bonavita v. Corbo, 300 N.J. Super. 179, 188 (Ch. Div. 1996).

42. "Ordinarily, oppression ... is clearly shown when the[] [oppressing shareholders ] have awarded themselves excessive compensation, furnished inadequate dividends, or misapplied and wasted corporate funds." Muellenberg v. Bikon Corp., 143 N.J. 168, 180 (1996). The B.C.A. recognizes "the uniquely disadvantageous position a minority shareholder occupies in a close corporation." Tutunikov v. Markov, No. A-1827-10T3, 2013 WL 3940889, at *7 (N.J. App. Div. Aug. 1, 2013). Oppression "has been defined as frustrating a shareholder's reasonable expectations" and "is usually directed at a minority shareholder personally[.]" Brenner v. Berkowitz, 134 N.J. 488, 506 (1993).

43. Plaintiff invested funds in Fluitec with the reasonable expectation that those shares would entitle Plaintiff to the reasonable appreciation that would occur with the success of the Company.  Further, Plaintiff had an expectation that his

1.

shares would be treated equally with those of all other shareholders, in particular the Controlling Shareholders.

44. Defendant's behavior prior to the 2nd of August was oppressive to the Plaintiffs.

45. The filing of the Belgian legal action, seeking to arbitrarily deprive the Plaintiffs of their shares at substantially below fair market value, escalates this behavior substantially.

46. Should the Defendants succeed in the Belgian effort, the Plaintiff's interest in the Company will be forever stolen. As a result, Plaintiffs, in addition to other actions, have filed a separate motion seeking an immediate preliminary injunction prohibiting Defendants from continuing with their illegal and improper action in Belgium.

47. Plaintiffs recognize that in seeking temporary and then permanent injunctive relief, they bear a heavy burden. Plaintiffs believe that they have met that burden.  Firstly, Plaintiffs believe that they have a more than reasonable probability of eventual success on the merits; secondly, they will suffer irreparable injury pendente lite if relief is not granted to maintain the status quo. If the Belgium court were to rule for Defendants, the Plaintiffs' shares would be forever gone; thirdly, that the balance of the parties' hardships, if relief is granted, weighs in strongly in favor of Plaintiffs.  If Defendant's action is stayed, they lose nothing pending the resolution of this matter; if it continues, it may result in the confiscation of the Plaintiff's shares; and fourth, that the public interest will be served by granting injunctive relief. A. O. Smith Corp. v. F.T.C., 530 F.2d 515, 525 (3rd Cir. 1976); Gewertz v. Jackman, 467 F. Supp. 1047, 1055 (D.N.J. 1979).

48. Taken at their face value, the behavior of the Defendants is egregious.  Not content with colluding to diminish the interests of the Plaintiff and block them from seeking fair market value for their shares, Defendants are now, based upon false and misleading statements to the Belgian Court, attempting to outright take and convert the Plaintiff's shares for themselves.

49. This proceeding, in a distant foreign court, in a language not spoken by the Plaintiff, under an obscure set of biased rules and procedures, is grossly discriminatory and unfair.

50. The continuation of these proceedings will cause Plaintiff to expend extraordinary sums of money and will potentially deprive Plaintiff of their shares with limited recourse.

## COUNT II
## Breach of Fiduciary Duty
## Against the All Defendants

51. The Controlling Shareholders and Controlling Directors owe a fiduciary duty to the minority shareholders and to the Company.  This duty of loyalty "mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director, officer or controlling shareholder and not shared by the stockholders generally." Cede & Co., 634 A.2d at 361. This duty precludes self-dealing by the Controlling Directors and Shareholders. In re The Brown Schs., 386 B.R. 37, 47 (Bankr. D. Del. 2008) (citation omitted). The burden is on the director to "demonstrat[e] the entire fairness of the transaction." William Penn P'ship v. Saliba, 13 A.3d 749, 756 (Del. 2011).

52. Entire fairness has two elements: "fair dealing and fair price." Id. Evidence of fair dealing includes the use of an arm's length bargaining process, Kahn v. Lynch Comm'n Sys., Inc., 669 A.2d 79, 82 (Del. 1995), and reliance on accurate and complete

1.

information, e.g., Valeant Pharms. Int'l v. Jerney, 921 A.2d 732, 748 (Del. Ch. 2007). Fair price "relates to the economic and financial considerations ..........." Weinberger v. UOP, Inc., 457 A.2d 701, 711 (Del. 1983). The entire fairness standard is "exacting," and requires the director to show that the deal was objectively fair, not just that he believed it to be so. See In re Marvel Entm't Grp., Inc., 273 B.R. 58, 78 (D. Del. 2002).

53. The duty of good faith requires "true faithfulness and devotion to the interests of the corporation." In re Walt Disney Co. Deriv. Litig., 906 A.2d 27, 67 (Del. 2006). This duty is breached when, for example, "the fiduciary intentionally acts with a purpose other than that of advancing the [corporation's] best interests, . . . acts with the intent to violate applicable positive law, or . . . intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties ." Id. Burtch v. Opus LLC (In re Opus E. LLC), No. 16-2202, at *14-15 (3d Cir. Sep. 28, 2017)

54. Further, particularly in a closely held corporation, majority shareholders have a fiduciary duty to minority shareholders. Roll v. Singh, 2008 WL 3413863, *7 (D.N.J. 2008) (finding that there was a fiduciary duty between the majority shareholder and the minority shareholder, thus creating a duty to disclose material information) (citing Davis, 451 F.2d at 662 (holding that a minority shareholder has standing to bring a direct cause of action against a majority shareholder for breach of a fiduciary duty); Small v. Goldman, 637 F. Supp. 1030, 1033 (D.N.J. 1986) (holding that a majority shareholder owes a fiduciary duty directly to the minority shareholders, and a shareholder may sue for the harm inflicted upon the corporation where there exists a special relationship between the suing shareholder and the defendant, creating a duty, contractual or otherwise, other than that owed to the corporation)).

55. "A breach of fiduciary duty, like professional negligence, is a theory in tort." Cantillo v. Fraenkel, No. A-0094-15T4, 2016 WL 7335811, at *4 (N.J. App. Div. Dec. 19, 2016) (citing In re Estate of Lash, 169 N.J. 20, 27 (2001)). "A fiduciary

who commits a breach of his duty as a fiduciary is guilty of tortious conduct to the person for whom he should act." Restatement (Second) of Torts §874 (1979). The fiduciary's obligations to the dependent party include a duty of loyalty and a duty to exercise reasonable skill and care. Restatement (Second) of Trusts §§170, 174 (1959). Accordingly, the fiduciary is liable for harm resulting from a breach of the duties imposed by the existence of such a relationship. Restatement (Second) of Torts §874 (1979).

56. Under New Jersey law, a fiduciary relationship exists when one party is 'under a duty to act for or give advice for the benefit of another on matters within the scope of their relationship.'" Miller v. Butler, No. 12-01004, 2014 WL 1716184, at *3 (D.N.J. Apr. 30, 2014) (quoting F.G. v. MacDonnell, 150 N.J. 550, 563 (1997)). Of particular significance to this lawsuit, "[t]he relation of joint adventurers, like that of co-partners, is fiduciary, one of trust and confidence, calling for the utmost good faith, permitting of no secret advantages or benefits." Silverstein, 156 N.J. Super. at 152 (quoting Bowne, 106 N.J. Eq. at 416).

57. In their behavior, the Defendants have clearly breached their duty to Plaintiffs and have damaged the Plaintiffs' economic and property interests.

**PRAYER FOR RELIEF**

**1. On the First Count:**

I.   Granting an immediate preliminary injunction against any legal proceedings relating to the Plaintiff in any court in any other jurisdiction other than this Court.

II. Pursuant to the provisions of N.J. Stat. Section 14A:12.7 (8) Plaintiffs seek an order of this Court mandating the sale of the share held by Fluitec N.V. in Fluitec

International L.L.C. at fair market value and the distribution of the proceeds of such sale to all of the shareholders in Fluitec;

III. For Plaintiff's costs and reasonable attorney's fees according to statute

## 2. On the Second Count:

I.     For an immediate injunction against any legal proceedings relating to the Plaintiff in any court in any other jurisdiction other than this Court;

II. For damages jointly and severally against all Defendants equal to One million two hundred thousand U.S. Dollars ($1,200,000.00) which is the estimated fair market value of Plaintiff's shares.

III. For Plaintiff's costs and reasonable attorney's fees.

IV.     Awarding such further equitable relief as the Court deems just and proper.

Dated:     September 2, 2021

By:     /S/  J. Todd Murphy, Esq.
J. Todd Murphy, Esq.
Attorneys for Plaintiff